# LOUIS QUINN *v.* STATE OF MARYLAND

[No. 236, Initial Term, 1967.]

374

Decided June 2, 1967.

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and O'DONNELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Elsbeth Levy Bothe* and *Fred E. Weisgal* for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Carville M. Downes, Special Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* on the brief, for appellee.

PER CURIAM.

On June 15, 1966 appellant was convicted of two cases of false pretenses by the giving of two worthless checks in violation of the provisions of Maryland Code (1957), Art. 27, § 142, by a jury in the Criminal Court of Baltimore. He was sentenced to imprisonment for a term of 8 years on each case, the sentences to run concurrently.

The only question raised on this appeal is whether the evidence proved violations of the statute.

No motion for judgment of acquittal was made pursuant to *Code,* Art. 27, § 593, which, in conjunction with Maryland Rules, 755 was enacted to implement the right of the trial court, under Maryland Constitution, Art. XV, § 5, to pass upon the

sufficiency of the evidence. *Giles v. State,* 229 Md. 370 (1962). An appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal. *Lotharp v. State,* 231 Md. 239 (1963); *Royal v. State,* 236 Md. 443 (1964); *Fowler v. State,* 237 Md. 508 (1965). In any event, apart from the rule that this Court will not review the sufficiency of the eviednce in a case tried by a jury in the absence of a motion for a judgment of acquittal below, this Court does not weigh the evidence presented to the jury, but only determines its sufficiency to take a particular issue, or the entire case, to the jury, when the point is properly preserved. *Ramsey v. State,* 239 Md. 561 (1965). It has been consistently held that in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Royal v. State, supra.* From our examination of the record, this was clearly not the case here.

There was evidence that on June 21, 1965, the appellant gave two checks to the Aberdeen Hobby and Sport Shop. These checks were admitted in evidence without objection. Both were dated June 21, 1965 and drawn on the First National Bank of North East, Maryland by the appellant under the name of Louis Quinn. The first check was payable to L.A. Grazzo in the amount of $317.80 and bore two endorsements, "L.A. Grazzo" and "Aberdeen Hobby and Sport Shop." The second check was payable to Nile Lounsbury in the amount of $365.20 and bore three endorsements, "Nile Lounsbury," "L.A. Grazzo," and "Aberdeen Hobby and Sport Shop." At the time the checks were given, the appellant was known to Ellis Friedlander, the proprietor of the Aberdeen Hobby and Sport Shop, as L.A. Grazzo, and it was not until June 28th that Friedlander learned that Grazzo and appellant were the same person. Friedlander gave the appellant cash for the checks and deposited them in the bank account of his company. The checks were returned about a week later with the notation that the account of the maker had been closed. The amount of the checks was debited to the account of the Aberdeen Hobby and Sport Shop and was

not repaid. The appellant telephoned Friedlander a day or two before the checks were returned by the bank and told Friedlander that "the roof is falling in, they have closed my account, don't panic." On July 3rd, not having received the money for the checks, arrest warrants were obtained.

Maryland Code, Art. 27, § 142, provides:

> "Every person who, with intent to cheat and defraud another, shall obtain money, * * * of the value of one hundred dollars or more, by means of a check * * * drawn upon any bank * * * not indebted to drawer, or where the drawer or drawers thereof, shall not have provided for the payment or acceptance, * * * and the same be not paid upon presentation, shall be deemed to have obtained such money * * * by means of a false pretense * * *. The giving of the aforesaid worthless check * * * shall be prima facie evidence of intent to cheat or defraud; provided that if such person shall be a bona fide resident of the State of Maryland and shall deposit with the drawee of such paper * * * within ten days thereafter funds sufficient to meet the same, with all costs and interest which may have accrued he shall not be prosecuted under this section, and no prosecution either by presentment, indictment or otherwise, shall be instituted or commenced until after the expiration of said period of ten days."

As soon as the State proved that the appellant cashed the checks and they had been dishonored the presumption of an intention to defraud arose, *Flannigan v. State*, 232 Md. 13 (1963), unless funds had been deposited with the drawee bank within ten days of the time the checks were given. *Maki v. State*, 239 Md. 311 (1965); *Cropper v. State*, 233 Md. 384 (1964). This presumption may be rebutted, but it was incumbent upon the appellant to overcome it and satisfy the jury that there was no actual intent to defraud. *Flannigan v. State, supra,* and cases cited. The appellant did not so satisfy the jury. He attempted to prove by Alan Grey, Executive Vice-President of the First National Bank of North East, called as a witness by him, that

at the time he obtained money for the checks the drawee bank was indebted to him, that the failure of payment of the checks upon presentation was because the drawee bank had closed his account and that he was prevented by the drawee bank from depositing funds sufficient to meet the checks. The appellant's account had been opened on June 8, 1965 with a deposit of $30.00. On June 10th there were two deposits made, one for $160 and one for $8,115. This last deposit represented two checks, one in the amount of $3,750 drawn on the Royal Bank of Canada, Sandres, Puerto Rico and the other, in the amount of $4,365 drawn on the Bankers Trust Company in New York. On June 15th, the First National Bank of North East received information that the Bankers Trust Company check would not be paid. The appellant was in the bank at the time and was given the information. Later that day he made a cash deposit of $4,365. The check drawn on the Bankers Trust Company was returned and charged to the account on June 18th. On June 21st, when the appellant gave the checks to Aberdeen Hobby and Sport Shop, there was a ledger balance, by reason of other deposits and withdrawals, of $11,070.91, but of this amount $3,750 represented uncollected funds (the deposit of the check drawn on the Royal Bank of Canada in Puerto Rico). The appellant knew that he could not draw against these uncollected funds. On June 11th, two checks totaling $6,-100, drawn on the appellant's account had been presented to the drawee bank and cash requested. The bank refused to honor them because the $8,115 deposit had been uncollected and so informed the appellant when he called the bank that day. On June 19th, the appellant went to the First National Bank of North East and requested that the $3,750 be released and was again told that this could not be done until proof had been received that the check in that amount drawn on the Puerto Rico bank had been paid. On June 22nd, checks previously drawn by the appellant on his account in the amount of $7,170 were charged against his account, leaving a ledger balance of $3,900.91, but an available balance of only $150.47. Therefore, at the time the appellant gave the checks to Aberdeen Hobby and Sport Shop there were insufficient available funds to his credit to honor them, which he knew, and he had made no ar-

rangements to provide for their payment or acceptance. He had never been told by the bank that the $3,750 was available to him to draw against. See *Cropper v. State, supra,* where there were numerous other outstanding checks to be paid and a deposit more than sufficient to cover the checks at issue was held not complying with the statute. In view of the circumstances in the instant case, we deem it immaterial that the bank noted on the checks returned to Aberdeen Hobby and Sport Shop that the account had been closed rather than noting a refusal to honor the checks because of insufficient available funds. The appellant's contention that he was prevented by the drawee bank from depositing funds to meet the checks arose, apparently, from Mr. Grey's testimony that appellant was told his account was closed and the bank was not interested in accepting more deposits from him. He overlooks, however, the further testimony of Mr. Grey that "* * * this would give the depositor an opportunity to come back and say to us, well, now, look, but I want to make this deposit to clear this account, and this will take care of all my checks. And then, this would close out the account. This is what we had in mind * * *." He also said that appellant would have been given the opportunity to deposit monies to cover the checks. "He would have been given that opportunity, the same as we give any customer." It was not incumbent upon the State to show that the appellant had made no effort to make the checks good. It was the duty of the appellant to show that he had been exonerated from prosecution by proving that he had deposited funds to meet the checks within ten days from the time he gave them, assuming that he was a bona fide resident of the State of Maryland. *Maki v. State, supra.*

It is clear that there was sufficient legal evidence before the jury to find the appellant guilty beyond a reasonable doubt.

*Judgments affirmed.*