CHARLES L. BODDIE, WILLIAM BODDIE AND
MARION C. BROOKS *v.* STATE
OF MARYLAND

[No. 225, September Term, 1968.]

524

*Decided April 21, 1969.*

James R. Miller and John MacDonald King for appellant Charles L. Boddie, Edward A. Palamara for appellant Brooks, and Victor L. Crawford for appellant William Boddie.

John J. Garrity, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County, Theodore A. Miller, Assistant State's Attorney for Montgomery County, on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellants Charles L. Boddie, William Boddie and Marion C. Brooks were found guilty by a jury in the Circuit Court for Montgomery County of conspiracy to rob with a dangerous and deadly weapon. Charles Boddie was sentenced to a term of three years and William Boddie and Brooks were each sentenced to a term of five years, the sentences to be served under the jurisdiction of the Department of Correction. Appellants jointly contend on this appeal (a) that the indictment was fatally defective, (b) that the trial court did not have jurisdiction over the cause, (c) that they were subjected to an illegal search and seizure and evidence taken as a result thereof was improperly introduced at the trial over their objection, and (d) that the evidence was insufficient to support their convictions.

I

Appellants were jointly charged with having, on March 28, 1967, "unlawfully conspired together with a dangerous and deadly weapon, to wit, a gun, to rob and violently steal from David Norrell * * *." Appellants urge that a criminal conspir-

acy is an agreement between two or more persons to do an unlawful act or to do a lawful act by unlawful means; that one of the essential elements of conspiracy is an agreement between persons; but that the indictment alleges only that the appellants reached an agreement with a gun, rather than with each other.

We see no merit in this contention. While an indictment must be adequately framed to inform the accused of the charge against him so that he may properly prepare his defense and protect himself against a subsequent prosecution for the same offense, *Seidman v. State*, 230 Md. 305; *Lynch v. State*, 2 Md. App. 546, we think a reading of the indictment as a whole makes it entirely plain that appellants were charged with having conspired together to commit robbery with a deadly weapon, *viz.*, by means of a gun. So considered, we hold that the indictment alleged a conspiracy and the object of it and, accordingly, appellants' motion to dismiss the indictment was properly denied by the lower court.

## II

Appellants contend that the State failed to prove that the alleged crime occurred in Maryland.

A conspiracy may be prosecuted where the illegal agreement arose or where an overt act in furtherance of the agreement occurred, *Lievers v. State*, 3 Md. App. 597, with the qualification that the offense is punishable in Maryland only when committed within the territorial limits of the State. See *Goodman v. State*, 237 Md. 64; *Bowen v. State*, 206 Md. 368.

In undertaking to prove that appellants conspired to rob David Norrell, evidence was adduced showing that Norrell was the night clerk or night manager at the In-Town Motor Hotel when, on March 28, 1967 at approximately 4:36 a.m., appellants drove up to the motel, left their car parked in a nearby alley, jumped over a fence, and unsuccessfully attempted to enter the front door of the motel, after which they hurriedly re-entered their car and attempted to elude a net of police officers who, with guns blazing, endeavored to arrest them.

Donald Shaw of the Montgomery County Police Department, assigned to the Silver Spring Station, testified at the trial that in the late evening hours of March 27, 1967, a motel located two blocks from the In-Town Motor Hotel had been held up

by three Negro males; that there recently had been a number of such motel holdups; that at 4:15 a.m. on March 28, 1967, the night manager of the In-Town motel had reported to police that three Negro males, acting suspiciously, had attempted to enter the motel but had left in their car when he phoned the police; that as a result of this information, he (Officer Shaw) was parked in his police cruiser near the intersection of 13th Street and Eastern Avenue for the purpose of maintaining surveillance on the In-Town motel; that at 4:36 a.m. he observed a motor vehicle containing three Negro males back into an alley "alongside and in the rear of the motel"; that this vehicle was similar to that which Norrell described to the police as having been driven by the three men who earlier that night had attempted to enter the motel; that the building line on the north side of Eastern Avenue constituted the dividing line between Montgomery County and the District of Columbia "for police purposes"; and that when the three men, later identified as the appellants, parked their vehicle in the alley and went up to the motel, they were beyond the building line and in Montgomery County "as I know Montgomery County and as I know the line to be." While Officer Shaw thereafter testified flatly that the In-Town motel was located in its entirety in Montgomery County, on cross-examination he stated that he did not know "exactly" and could not state "as a fact" where the boundary line between Montgomery County and the District of Columbia was actually located.

David Norrell testified that he "worked for the In-Town Motor Motel in Silver Spring" which he assumed to be in Montgomery County.

The testimony that the motel was located in Silver Spring would clearly permit the trial judge to take judicial notice of the fact that that city is located in Maryland. See *Iozzi v. State*, 224 Md. 42; *Dean v. State*, 205 Md. 274. Moreover, we think it clear that the testimony of Officer Shaw and Norrell was legally sufficient to permit the conclusion that the appellants were in the State of Maryland when they parked their vehicle in the alley and attempted to enter the motel. If then the evidence was legally sufficient to show the existence of a conspiracy to rob Norrell, we think, at the least, an overt act in furtherance thereof occurred within this State.

## III

Appellants contend that their arrests without a warrant were unlawful and that the warrantless search of their vehicle was likewise illegal. The contention is based on two grounds, (1) that the arresting officer did not have probable cause to believe that appellants had committed or were committing a felony at the time he arrested them, and (2) that the arrests occurred in the District of Columbia and were illegal for failure of the Maryland officers who made the arrests to comply with the provisions of the Uniform Act on Fresh Pursuit of the District of Columbia, Annotated Code, Title 23, Sections 501-504.

The evidence at trial established that appellants were arrested in their vehicle in the roadbed of Eastern Avenue at a point just inside the territorial boundary of the District of Columbia. The evidence also indicated that appellants' vehicle was searched by the Montgomery County police officers immediately after their arrest and that a fully loaded .22 caliber revolver was found under the driver's seat, an open six inch knife was found under the front passenger's seat, and two pair of "unusual" scissors were found in the rear seat of the car.

At the time it ruled that appellants had been lawfully arrested and that the items seized from the vehicle were properly admissible in evidence before the jury, the trial court had before it—in addition to the testimony of Officer Shaw hereinbefore set forth—further testimony from Shaw to the effect that appellants backed their car into the alley so that its front faced the mouth of the alley; that the appellants then jumped over a fence separating the motel property from the public way, and that William Boddie went to the front door of the motel while the other two appellants stood on either side of the door; that after unsuccessfully attempting to gain entry through the motel door, the three men left the premises and as the police officers, who had been conducting surveillance of the motel, began to close in on the appellants to block their egress from the alley, the appellants ran to their vehicle, entered, and with tires screeching, attempted to drive away. Shaw testified that he positioned himself in front of appellants' vehicle as it was moving toward him; that a police car, its red lights on, had also then been positioned at the mouth of the alley;

that William Boddie was driving appellants' vehicle and had a gun in his hand; that he (Shaw) began firing his revolver at appellants' vehicle as it came toward him; that the vehicle nevertheless came straight at him, causing him to jump back against the wall, appellants' vehicle missing him by about two or three feet; that one of the bullets which he fired at appellants' vehicle struck the driver of the car, causing him to lose control of the car, which then crashed into a parked automobile, and came to rest a short distance away on Eastern Avenue, where appellants were then arrested, William Boddie being taken to the hospital and the other appellants being forthwith taken to the Silver Spring Station.

The legality of appellants' arrests must be determined by applying the law of the District of Columbia, the jurisdiction in which they were made. See *Miller v. United States,* 357 U. S. 301, *Berigan v. State,* 2 Md. App. 666. Under the Uniform Act on Fresh Pursuit of the District of Columbia, a Maryland peace officer is authorized to enter the District while in fresh pursuit to effect an arrest where there is reasonable grounds to believe that the person to be arrested has committed a felony in Maryland. In so acting, the Maryland police officer is vested by Section 501 with the same authority to arrest and hold such person in custody as a police officer of the District of Columbia would have to make an arrest of a person believed to have committed a felony in the District. In this connection, we note that the law of Maryland and that of the District are virtually identical with respect to the authority of a peace officer to make a warrantless arrest for a felony. Compare *Davis v. United States,* 230 A. 2d 485, *Curtis v. United States,* 222 A. 2d 840, and *Townsley v. United States,* 215 A. 2d 482 (District of Columbia Court of Appeals) with *Robinson v. State,* 4 Md. App. 515. See also *Berigan v. State, supra.* And it is not here questioned that the Maryland officers were in "fresh pursuit" of the appellants since, under Section 504 of the District statute, that term "shall not necessarily imply an instant pursuit, but pursuit without unreasonable delay." [1]

---

1. The Uniform Act on Fresh Pursuit has also been adopted in Maryland. See Maryland Code, Article 27, Sections 595-602.

On the record before us we hold that the arresting officer had probable cause to believe that appellants had committed a felony in Maryland. Probable cause in this context exists when the facts and circumstances within the knowledge of the arresting officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Michaels v. State,* 2 Md. App. 424; *Gaudio v. State,* 1 Md. App. 455. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Edwardsen v. State,* 243 Md. 131; *Terrell v. State,* 3 Md. App. 340. In other words, an officer is not required to have sufficient evidence to convict at the time of the arrest, but only probable cause or, as stated by the Supreme Court in *Spinelli v. United States,* 393 U. S. 410, "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." In *Davis v. United States, supra,* the District of Columbia Court of Appeals held at page 486 that "the problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth." And it is settled that the legality of an arrest is measured by the existence of probable cause *at the time of the arrest. Mullaney v. State,* 5 Md. App. 248; *Leatherberry v. State,* 4 Md. App. 300; *Wilson v. State,* 2 Md. App. 210. In *Simms v. State,* 4 Md. App. 160, we noted at page 167:

> "In assessing the validity of an arrest under the rule the essential ingredient is that probable cause existed within the knowledge of the arresting officer and not that he necessarily construed that knowledge correctly. It is not the belief of the officer that determines the validity of the arrest; it is whether, in the situation in which he found himself, he had probable cause to believe a felony had been committed and that the person arrested committed it."

Officer Shaw testified in effect that under the circumstances he thought he had probable cause to arrest appellants for the

felony of robbery. Without question there was clear ground for suspicion that appellants were responsible for the prior motel holdups and particularly for the one that occurred that night only two blocks from the In-Town motel. The officer knew that three Negro males had been involved in those holdups; that three Negro males had attempted to secure entry into the In-Town motel at around 4:00 a.m. that morning; and that the car driven by these men was similar to that driven by the three Negro males who, at 4:36 a.m., again attempted entry into the motel. These facts, coupled with appellants' frenzied flight from the motel when the police appeared on the scene, furnished a strong basis for the officer's belief that appellants were the robbers, particularly when he observed that the driver of the escaping vehicle had a gun in his hand and was attempting to escape the police despite a hail of police bullets fired at them in an effort to prevent their departure.

But we need not base our decision on whether there was probable cause to arrest appellants for the felony of robbery. We think the evidence shows that Officer Shaw had probable cause to arrest appellants for an assault with intent to murder—an assault committed by the appellants upon the officer when, in attempting to escape, they drove their vehicle at a high rate of speed toward him as he stood in the alley, causing him to jump back against the wall to avoid being struck. Assault with intent to murder is a felony, intent being the essence of that offense, so that if the intent is carried out, the resulting crime would be either first or second degree murder (specific intent to murder, however, not being a necessary element of the offense). *Simms v. State, supra; Lawrence v. State,* 2 Md. App. 736. The fact that Officer Shaw may not have arrested appellants for that offense, or that they were subsequently acquitted thereof, does not mean that the arresting officer did not have probable cause to properly base an arrest upon the commission of that crime. See *Simms v. State, supra,* at page 167. We hold that probable cause existed to arrest appellants for the felony of assault with intent to murder and the arrest being lawful, the search and seizure incident thereto were also lawful.

Appellants contend that by his actions, Officer Shaw arrested them in the alley before they began to drive away and

that such arrest, being illegal, entitled them to use reasonable force to avoid it. But as we have heretofore indicated, we think that irrespective of Officer Shaw's subjective intention when he first accosted appellants in the alley, the actual arrest did not occur until after appellants had fled the scene and entered the District of Columbia.[2] And as that arrest was valid, the search incident thereto was likewise valid under either Maryland or District law. Compare *Townsley v. United States, supra* with *Robinson v. State, supra.*

Nor are we persuaded that the arrest and subsequent search and seizure should be declared invalid under District law because the Maryland officers admittedly failed to comply with the provisions of Section 502 of the District's Uniform Act on Fresh Pursuit. That Section, by its terms, required that appellants be taken "without unnecessary delay" before a judicial officer of the District to conduct "a hearing for the purpose of determining the lawfulness of the arrest," so that, if found lawful, the person arrested can be held for extradition proceedings, or released from custody if found unlawful. Appellants cite no cases from the District of Columbia or elsewhere which would require a holding that failure to comply with Section 502 vitiates the arrest, otherwise lawful under Section 501, and renders invalid the search made incident thereto. Nothing in Section 502 purports to require the approval of a judicial officer of the District of Columbia before a search incident to the valid arrest can be made. We think the provisions of Section 502 are essentially procedural in nature and such as anticipate the eventual initiation of extradition proceedings and make preliminary provision in furtherance thereof. In concluding that the arrest and search here involved were made in compliance with District law, we do not mean to imply that Maryland officers making arrests in the District of Columbia under that jurisdiction's Uniform Act on Fresh Pursuit may with impunity ignore the provisions of Section 502. We hold, however, under the cir-

---

2. Even if the arrest occurred in the alley and had been illegal, we think it plain that the force used by appellants to avoid it was excessive and under the circumstances the officer would have had probable cause to arrest them for an assault with intent to murder. See *Halcomb v. State,* 6 Md. App. 32.

cumstances of this case, that the arrest of appellants and the search of their vehicle were lawful when made and that they are not voided by failure of the Maryland officers to comply with the procedural provisions of Section 502.

## IV

Finally, we find no merit in appellants' contention that the court erred in denying their motions for judgments of acquittal and permitting the case to go to the jury.

As heretofore indicated, the gist of a conspiracy is the entering into of the illegal scheme or design (*Greenwald v. State*, 221 Md. 245) and commission of the offense may be shown by circumstantial evidence from which an inference of common design may be drawn, it not being vital to demonstrate that the conspirators met and agreed in terms to a set design and to pursue it by common means. *Harper v. State*, 6 Md. App. 1; *Price v. State*, 4 Md. App. 701.

To overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, from which the jury could find the accused guilty beyond a reasonable doubt. *Royal v. State*, 236 Md. 443; *Culver v. State*, 1 Md. App. 406. In every criminal case—whether tried before a jury or by the court sitting without a jury—evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. *Vincent v. State*, 220 Md. 232; *Spencer v. State*, 1 Md. App. 264. While it is neither our function nor our prerogative to weigh the evidence presented to the jury, we are required to determine its legal sufficiency to take a particular issue, or the entire case, to the jury when, as here, the point is properly preserved by motion for judgment of acquittal. *Quinn v. State*, 1 Md. App. 373. In the final analysis, therefore, to set aside the jury verdict we must be able to say that there was no legally sufficient evidence from which the jury could find appellant guilty beyond a reasonable doubt. *Pressley v. State*, 244 Md. 664. See *Cobb v. State*, 2 Md. App. 230, 233-234.

On the record before us, we think there was evidence before the jury to support a rational inference that the appellants had conspired to rob Norrell, the night clerk or manager of the In-Town motel. Without again detailing the evidence adduced at the trial, we particularly point out that the testimony showed that it was the appellants who, in a furtive manner, approached the motel at 4:36 a.m. on March 28; that they were the same men as had previously attempted to enter the motel at 4:00 a.m. the same morning; and that when the police appeared on the scene, appellants fled in great haste, displaying a revolver, later found to be loaded, in the course of their attempted flight. From their movements both before and after they attempted to enter the motel, the jury could properly infer that appellants had no lawful purpose and were there in furtherance of a conspiracy to rob the motel's night manager. In any event, against such an evidentiary background, we cannot say that there was no legally sufficient evidence from which the jury could find appellants guilty of conspiracy to rob beyond a reasonable doubt.

*Judgments affirmed.*