Thomas Wallace MIZE *v.* STATE of Arkansas

5440                                    445 S. W. 2d 73

Opinion delivered October 6, 1969

*Little & Lawrence,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

John A. Fogleman, Justice. This is an appeal from the denial of postconviction relief under Criminal Procedure Rule 1. Appellant asserts the following points for reversal:

"1. Petitioner was denied effective assistance of counsel at the post-conviction relief hearing since he was represented during same by an appointed attorney who had a conflict of interest prejudicial to petitioner's cause.

2. Petitioner was denied the right to have a witness present who could have supported petitioner's contentions for post-conviction relief in that the Circuit Court of Benton County, Arkansas, erroneously refused to allow Gene Leland McGahan to attend the hearing as a witness for petitioner.

3. Petitioner's plea of guilty was erroneously entered and should be set aside for the reason that he did not understand its meaning and effect and it was not entered freely and voluntarily but was unlawfully induced and coerced by threat of prosecution of another."

Appellant, along with Gene Leland McGahan and Pauline McGahan Davis, was charged with two counts of forgery and uttering. He was also charged, along with Gene Leland McGahan with two counts of attempt to escape from the Benton County jail. J. L. Hendren was employed by appellant and his codefendants to represent them. On December 10, 1968, appellant entered a plea of not guilty on the charges of forgery and uttering but changed his pleas to guilty on January 29, 1969, when he also pleaded guilty to the escape charges. He was originally given a sentence of not less than five years nor more than ten years on the first two charges and a three-year sentence on the escape charges, to run concurrently with the other sentences. On February 20, 1969, the sentences on the charges of forgery and uttering were corrected to a minimum sentence in each case of three years and four months in compliance with Act 50 of 1968.

When the present petition was filed, the circuit

judge appointed the attorney previously retained by appellant to represent him, in spite of this attorney's expressed conviction that his interests conflicted with those of appellant.

Appellant testified that he recalled being questioned by the trial judge in connection with his pleas of guilty and his answers to these questions along with the court's explanation that the pleas would not be accepted unless they were changed because of his guilt. He also recalled discussing these pleas with his attorney, and he admitted that he was advised of his right to a jury trial and that he should enter a plea of not guilty, if he so desired. He stated, however, that his pleas of guilty were induced by a threat that if he did not do so, his girl friend and codefendant, Pauline Davis, who had admitted her guilt, would not receive a suspended sentence, but would be sentenced and would lose her two small children. Mize testified that he had told his attorney he would rather be tried on each and every charge, until Pauline Davis received a phone call from her husband advising that if she were not "cut loose" her children would be taken from her, and she advised him that the prosecuting attorney had also told her this. Mize then told his attorney that he wanted to change his pleas. The attorney advised him that he had a right to do so if he wished, but also advised at all times that he had a right to continue his pleas of not guilty if he wished. He stated that the attorney did not, in any way, force him to plead guilty, or advise him that it would be in his best interest to do so, but left his plea up to him. He recalled that Hendren told him it was up to him if he wanted to plead guilty in order "to be a Sir Galahad for Pauline."

The pleas of guilty were then entered. The trial court appropriately caused a record to be made of these proceedings. Hendren then stated that he had outlined to all three defendants their rights and possibilities with respect to a jury trial, requested permission to enter

pleas of guilty and related that negotiations with the prosecuting attorney had resulted in recommendation of the sentences later imposed for appellant and McGahan and a suspended sentence of three years for Mrs. Davis. The attorney advised the court that restitution had been made to those who had suffered losses because of the forgery and uttering of the money orders. The trial judge questioned each of these defendants extensively concerning the pleas then entered. He ascertained that appellant had been previously convicted of larceny on a plea of guilty. When asked if he knew what the pleading was and the nature of it. Mize answered in the affirmative. He also stated ''I did'' when the circuit judge asked if he had forged and uttered an instrument or check purportedly signed by someone else. The judge, after having given an explanation in detail, ascertained that each of the accused understood the sentences negotiated and their effect. Thereafter, Mize asked no questions about the plea, the charge, the sentence or disposition of the case even though the court gave him an opportunity to do so. He did ask about the release of some money being held pending completion of restitution. Judge Enfield made a very firm statement to these defendants that the only reason he was accepting the recommendation as to sentence, in view of their records, was because of the restitution made.

Because we feel that an attorney might well be placed in an untenable position when relief such as this is sought on the grounds alleged, it might have been appropriate that he be relieved and other counsel appointed under similar circumstances. While it did not become necessary in this proceeding, Hendren might well have been called as a witness. If this had occurred, all parties would have been placed in a perplexing situation. Still, we find that appellant had effective assistance of counsel. An examination of the record reveals that Hendren vigorously and capably conducted the presentation of evidence by and on behalf of Mize, the cross-examination of state witnesses, the making of ob-

jections, argument of the case below and briefing on appeal. Appellant expressed his satisfaction with the appointment of Hendren to represent him in the post-conviction hearing. He testified that this attorney advised him that he could continue his pleas of not guilty, and did not advise him that it was in his best interest to plead guilty. He added that the only way that the attorney influenced him was in accepting the sentence negotiated. He recalled stating to Hendren on the day of his sentencing that he would plead not guilty if he had to pay $457 in court costs. The attorney, according to Mize, agreed that this was ridiculous and persuaded the circuit judge to direct a reduction to $112.60. Thus, there is no merit in Point 1.

Likewise, we find no merit in Point 2. There was no indication in appellant's petition or by any other means that he desired the attendance of McGahan to attend the hearing as a witness. The record disclosed that appellant's attorney advised the court promptly when he learned of his client's desire to present McGahan as a witness in support of the petition.[1] While the circuit judge refused to continue the hearing because of Mize's failure to make an earlier request for the attendance of McGahan, the court admitted into evidence an unsworn statement made by the proposed witness which had been attached to the petition. In this statement McGahan asserted that neither Mize nor Pauline Davis had any part in his passing the forged money orders and that all three were "pressured" into entering pleas of guilty by being told that Mrs. Davis would lose her two little girls if they did not do so. It was not suggested either in the trial court or in this court that McGahan would have testified to any other fact, if he were present. Under these circumstances, appellant was not prejudiced by the absence of McGahan, even if

[1] It appears that Mize was brought to the Benton County jail in the late evening of the day preceding the hearing and that he first conferred with his attorney about 8:20 p.m. Hendren stated that he was first advised of Mize's desire to have the attendance of McGahan on the morning of the hearing.

the trial court could be said to have acted erroneously in denying the request because of appellant's lack of diligence in the matter.

In addition to the matters hereinabove set out, Mize testified that he told Hendren he was going to tell the judge that he was pleading guilty only on account of Pauline Davis and her children and not because he was guilty. According to him, Hendren said that the judge would not accept such a plea and that Mrs. Davis would remain in jail. Thereafter, the pleas of guilty were entered under the circumstances set out above. The trial judge expressly found: that he did not believe petitioner's testimony on the issue of voluntariness of his change of pleas; that he voluntarily, knowingly and understandingly entered his pleas of guilty; and that, after advice of counsel and of the court concerning jury trial, he voluntarily waived such a trial. We find ample support for these findings. In so doing, we consider appellant's testimony that he would not have gone through with his pleas of guilty if the court costs had not been reduced by $300 to be of some significance.

In view of the failure of the trial judge to believe petitioner's testimony, we find the decision in *Cullum* v. *State,* 244 Ark. 290, 424 S. W. 2d 523, relied upon by appellant, not applicable, even if it might otherwise have been. In that case the trial court accepted at face value the positive and undenied testimony by the petitioner there relating to promises made to him by the arresting officer and prosecuting attorney as inducement to the plea of guilty. In this case, there was no direct evidence that the threat as to Pauline Davis was actually made by the prosecuting attorney. Pauline Davis was apparently the only source of appellant's information on this subject.

We do not overlook evidence relating to alleged threats of physical violence to Mize by the sheriff and his deputy, but it is clear that these threats, if made,

were connected with efforts of Mize and his codefendant to escape and not with the pleas made or to be made in the cases.

The judgment is affirmed.