514 A.2d 492

**Ransom HAMLET, Jr.**

v.

**STATE of Maryland.**

**No. 1492, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Sept. 8, 1986.

Howard L. Cardin and Mark L. Gitomer, Baltimore, for appellant.

Ronald M. Levitan (Stephen H. Sachs, Atty. Gen., Jillyn K. Schulze, Asst. Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Marion Ehrlich, Asst. State's Atty. for Baltimore City on brief), Baltimore, for appellee.

Submitted before GARRITY and ALPERT, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

On August 27, 1985, appellant Ransom Hamlet entered a plea of guilty to the charge of possession with intent to distribute cocaine. He was found guilty and received a sentence of five years incarceration. We granted his Application for Leave to Appeal and address his sole contention that his guilty plea was not freely and voluntarily made.

Appellant's above contention emanates from the fact that he was charged and tried with two other co-defendants: one Zena Hamlet, age 23, and Clarence Hamlet, age 19. These codefendants are appellant's step-children.

The State's Attorney announced at the beginning of the proceedings that the State intended to try all three cases together. Plea bargain agreements with the two co-defendants had been negotiated; appellant likewise had been of-

fered a sentence substantially below the guidelines.[1]  At one point, appellant indicated that he wanted to plead not guilty and proceed with trial on the merits.  The State made it clear, however, that it would not accept guilty pleas from either of the two co-defendants until appellant's case was disposed of because it would be necessary to call them to testify against appellant if his case went to trial.

> MS. ERLICH: Your Honor, the other thing the State would want to put on the record, and this is the State is prepared at this time, that if the State is to try the case, that the State is not going to just call the case of Ransom Hamlet.  The State is also calling the case of Clarence and Zena Hamlet for trial.

> I think I've already told the Court that if the State was trying these cases, that they would be trying all the cases, because what the plea bargain that the State offered was contingent on all of the Defendants pleading guilty and not just one.  It is not the State's intention, and it has never been, to separate any of those cases.

> THE COURT: Mr. Hamlet, I understand that the co-defendants are relatives of yours;  is that correct?

> MR. R. HAMLET: That's correct.

> THE COURT: Do you understand what the State's saying?  While they both have been offered probation, I believe, and are willing to accept it, that they're not willing to split their cases off yours, which means that they're going to have to run the risk of being found guilty and perhaps incarcerated because of your insistance on going to trial.  But that's up to you.  You still want to go to trial;  is that correct?

---

**1.**  The Maryland judiciary has promulgated sentencing guidelines the main purpose of which is to reduce unwarranted variation while retaining judicial discretion to individualize sentences.  These guidelines have been recognized by the legislature, *see* Md.Ann.Code, Art. 27 § 643C (1982 Repl.Vol., 1985 Cum.Supp.)  They are, however, not mandatory. *See Teasley v. State,* 54 Md.App. 454, 458 A.2d 93 (1983), *aff'd,* 298 Md. 364, 470 A.2d 337 (1984).

MR. R. HAMLET: Uh-huh.

Immediately thereafter, a bench conference was called, at which the appellant apparently changed his mind and decided to plead guilty. The court then proceeded to conduct the appropriate inquiry as to all three defendants pursuant to Maryland Rule 4–242(c), and accepted the pleas. At the disposition hearing held on August 30, 1985, a second inquiry was conducted as to appellant. Appellant contends on appeal that he was coerced to plead guilty in order to protect his children from possible prison sentences if they were taken to trial and convicted.

### THE LAW

In *Hudson v. State,* 286 Md. 569, 409 A.2d 692 (1979), *cert. denied,* 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980), the Court of Appeals outlined the standard for determining the validity of a guilty plea. The Court said:

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." [*North Carolina v.] Alford,* 400 U.S. [25], 31 [91 S.Ct. 160, 164, 27 L.Ed.2d 162] (1970). *See, Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709 [1711, 23 L.Ed.2d 274] (1969); *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510 [513, 7 L.Ed.2d 473] (1962); *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582 [583, 71 L.Ed. 1009] (1927). This standard is met when the plea was entered by an accused:

(1) voluntarily, that is, not through coercion, terror, inducements or threats, subtle or blatant; and

(2) with an intelligent understanding, that is, not through ignorance or incomprehension:

(a) of the nature of the offense to which he is pleading guilty; and

(b) of the possible consequences of such a plea; and

(3) unconditionally, that is without any condition or qualification;

(4) even though the accused denies his guilt, provided the prosecution demonstrates a strong factual basis for the plea and the accused clearly expresses a desire to enter it despite his professed belief in his innocence.

286 Md. at 595, 596, 409 A.2d 692 (citations omitted).

■ "The determination in a particular case whether the standard was met depends upon the particular facts and circumstances of that case, including the background, experience and conduct of the accused." *Id.* at 596, 409 A.2d 692, citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The inquiry is, by nature, individual to each case: "the voluntariness of a guilty plea 'can be determined only by considering all of the relevant circumstances surrounding it.'" *State v. Bragle,* 296 Md. 375, 383–84, 463 A.2d 798 (1983), citing *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *See also State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981). The relevant circumstances which must be taken into account are those that are disclosed by the record including the complexity of the charge, the personal characteristics of the accused, and the factual basis offered to support the court's acceptance of the plea. *State v. Priet,* 289 Md. at 288, 424 A.2d 389.

■ Applying the "totality of the circumstances" test to the facts of the instant case, we cannot say that the terms of the plea bargain agreement, as explained by the trial judge, rose to the level of "coercion, ... inducement or threat, subtle or blatant," so as to vitiate the voluntary nature of appellant's plea of guilty. We established this principle in *Blinken v. State,* 46 Md.App. 579, 420 A.2d 997 (1980), *aff'd,* 291 Md. 297, 435 A.2d 86 (1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982). There, the appellant Blinken was tried along with his girlfriend/co-defendant, and he claimed that he was induced to enter a guilty plea by a promise of the State's Attorney that she would be given a lenient sentence. We said, "[T]he linkage between the co-defendants' plea agreement did not

constitute even subtle inducement, but rather formed the accommodation which was the end product of plea negotiations." 46 Md.App. at 589, 420 A.2d 997. "The involvement of third party beneficiaries in plea negotiations is not an intrinsic infirmity to the negotiated plea." *Id.* at 589–590, 420 A.2d 997.

Likewise, this principle is accepted in other jurisdictions. In *Kent v. U.S.,* 272 F.2d 795 (1st Cir.1959), where a defendant was told that his fiancee, who had confessed to involvement in the crime, would be charged as an accessory unless he entered a guilty plea, the court laid out the rule which has been followed by these courts:

> We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments. Indeed, a contrary ruling would mean that a defendant could equally say that he pleaded guilty to save himself. It is certainly not duress, if the promise is kept, for the government to say it will recommend a lighter sentence if a defendant pleads than it might recommend if he is convicted after trial.

272 F.2d at 798–799 (citations omitted).

In *United States v. Tursi,* 576 F.2d 396, 398 (1st Cir. 1978), the court examined both sides of the issue, and determined that a defendant's agreement to plead guilty with knowledge that the court *might* give his co-defendant/son a lesser sentence, was not coerced, but was fully voluntary. The court noted:

> Plea bargaining is now accepted as a legitimate and necessary component of our criminal justice system. So long as the plea is entered knowingly and voluntarily, it has been felt that the advantages which accrue to both prosecution and defendant outweigh its potential abuses. However, it has been recognized that there are special considerations attending a guilty plea offered in consider-

ation of lenient treatment for a person *other* than the defendant. Generally, the fear has been that there is greater danger of coercion in such a situation and that, accordingly, special care must be taken to ascertain the voluntariness of the guilty plea.

(Emphasis in original).

Other courts have acceded to this view. *See State v. Solano*, 150 Ariz. 398, 724 P.2d 17 (package deal plea bargain agreements where each defendant's agreement is contingent upon the acceptance of all co-defendants' agreements offends neither State law nor the Constitution); *In re Ibarra*, 34 Cal.3d 277, 193 Cal.Rptr. 538, 543–545, 666 P.2d 980, 985–987 (1983) (package deal plea bargain where prosecutor affords defendant opportunity to plead guilty to lesser charge, contingent on guilty plea by all co-defendants, was not coercive per se); *Wilson v. State*, 155 Ind.App. 100, 291 N.E.2d 570, 574 (1st Dist.1973) (father's agreement to plead guilty in order to obtain shorter sentence for his codefendant/son, albeit a "sacrificial plea," was not coerced or involuntary); *Mize v. State*, 247 Ark. 275, 445 S.W.2d 73, 75–76 (1969) (defendant's entry of guilty plea found to be voluntary in spite of testimony that defendant was told that unless he pled guilty, his girlfriend would not be given a suspended sentence and would lose her two small children); *United States ex rel. Cunningham v. Follette*, 397 F.2d 143, 146 (2nd Cir.1968), *cert. denied*, 393 U.S. 1058, 89 S.Ct. 699, 21 L.Ed.2d 699 (1969) (alleged statement by prosecutor that if defendant wanted to take his girlfriend and co-defendant "off the hook" he would have to plead guilty, even if true, would not invalidate the plea); *United States v. Fay*, 348 F.2d 705, 707 (2nd Cir.1965), *cert. denied*, 382 U.S. 997, 86 S.Ct. 583, 15 L.Ed.2d 484 (1966) (fact that defendant's entry of plea of guilty to second degree murder was influenced by desire to help co-defendant escape electric chair does not alone vitiate voluntary nature of plea); *Cortez v. United States*, 337 F.2d 699, 701–702 (9th Cir.1964); *cert. denied*, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726

(1965) (deal struck between defendant and prosecuting attorney that if defendant pled guilty, his pregnant wife and co-defendant would be allowed to plead guilty to a lesser charge, while motivated by a desire to protect his wife, was nonetheless voluntary); *but see United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979) (claim that guilty plea was induced by prosecutors' threat to indict defendant's wife was matter which should have been examined in a hearing before petition was dismissed). *Accord, Johnson v. Wilson,* 371 F.2d 911, 912 (9th Cir.1967).

■ Because we believe that the plea was voluntary and that the prosecutor acted in good faith in the striking of the plea bargain, *United States v. Nuckols,* 606 F.2d at 569,[2] we hold that the judgment and sentence of the circuit court must be affirmed.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT

---

**2.** We see no intrinsic constitutional infirmity in broadening plea negotiations so as to permit third party beneficiaries. . . . Recognizing, however, that threats to prosecute third persons can carry leverage wholly unrelated to the validity of the underlying charge, we think that prosecutors who choose to use that technique must observe a high standard of good faith.
606 F.2d at 569.