527 A.2d 1326

**Jason Victor HAMM**

v.

**STATE of Maryland**

**No. 1547, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 13, 1987.

Certiorari Denied Dec. 9, 1987.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty., for Harford County and Gerard S. Comen, Asst. State's Atty., for Harford County, on the brief, Bel Air), for appellee.

Argued before ALPERT, KARWACKI, and POLLITT, JJ.

ALPERT, Judge.

This case involves a routine traffic stop that escalated into an arrest and prosecution of two people: the driver for unauthorized use of the car and the passenger for possession of cocaine with intent to distribute and transporting a handgun. Before trial, the passenger, appellant Jason Hamm, moved to suppress the admission of the drugs as evidence. After oral argument, that motion was denied. The case was then tried upon an agreed statement of facts.

After presentation of the statement of facts, the Honorable Albert P. Close, Circuit Court for Harford County, found appellant, Jason Victor Hamm, quilty of possession with intent to distribute and sentenced him to five years imprisonment. A timely appeal was filed, and the following questions presented:

1. Did the trial court err in denying appellant's motion to suppress?

2. Did the trial judge err in refusing to fully consider and in denying appellant's request to withdraw from his agreement to proceed by a not guilty statement of facts?

## I. *Motion to Suppress*

Appellant contends that the trial court erred in denying his motion to suppress cocaine seized from him. We disagree and explain as follows.

On December 11, 1985, Corporal Michael Joseph Cole stopped a 1986 Chrysler Fifth Avenue for speeding. The car was stopped at approximately 1:50 a.m. on I–95, just south of the Susquehanna River Bridge. The car was being driven by Leslie Hamm. Her brother, Jason Hamm, was the only passenger in the automobile.

After the stop, Trooper Cole approached the car from the passenger side, startling Jason Hamm. While asking for the driver's license and the vehicle's registration, Cole noticed a large knife sitting on the dashboard. He then returned to his patrol car to examine the license and registration, that Leslie Hamm had given to him.

Leslie Hamm's driver's license had been issued by the State of California and listed a Los Angeles address. The car had been rented from Snappy Car Rental. The rental agreement, which was given to the officer in lieu of the registration, was in the name of Nadine Stansfield. After questioning, Jason Hamm revealed that the car had been rented to his girlfriend, but that "she was still back in Baltimore." Cole testified that this information, coupled with an examination of the rental contract, led him to believe that Leslie and Jason had unauthorized use of the automobile.[1]

---

**1.** On the motion, Officer Cole testified as follows:

A. After scanning over the rental contract, I picked up on it what I believed to be a violation of the contract. And I called on the police radio for Trooper Parris to stop by my location as back up. While I was waiting for him ... he wasn't in the immediate area ... I

When Trooper Cole returned to the stopped vehicle, the knife he had seen earlier was missing and a hat was put in its place. Concerned for his safety due to the unknown location of the knife, Cole asked Leslie and Jason Hamm to get out of the car.[2] Once out, the occupants were frisked

---

finished writing my warning for speed and reviewing the contract in full.

Q. What was the problem with the contractual agreement?

A. It didn't ... by the waivers, the insurance waivers that the renter did not option for, then by the contract it did not allow anyone other than the renter to operate the car; which is kind of a common fault that we find on stopping rental cars.

Q. So that I understand you correctly, the contractual agreement only provided for the renter to be driving the car, is that correct?

A. Yes.

.        .        .        .        .

Q. (By Mr. Comen) Could you determine that by looking at the contract?

A. Most contracts ... Like I said, the contract was for a Nadine Standfield. And the only occupants in the car was Jason and Leslie Hamm. And most contracts, in my experience with them, like I said, a lot of them will have an actual additional block on the contract for additional drivers. So if you wanted to have a couple ... say you and I were renting a car together and I wanted to have you legally be able to drive it too, you would be present at the counter at the time of the rental, and your name could be added onto it as authorized drivers permitted by the company. But this particular contract did not have any additional drivers listed on the contract, other than the renter.

2. During the hearing on the motion to suppress, Trooper Cole was questioned extensively regarding his fear for his own safety. The following transpired when the trooper was questioned concerning his fear when he initially saw the knife on the dash:

Q. Is it fair to say at that time you were not in any fear of your safety [when you saw the knife on the dash]; is that correct?

A. I was concerned. But I didn't over react, because I knew where it was, and....

During cross-examination, the trooper was questioned further regarding his apprehension when he noticed that the knife had been secreted:

Q. So if you were fearful for your safety you would ask them to leave the car, is that correct?

A. I would pat them down physically for weapons.

Q. After you leave the car?

A. And I would check where they could grab up under the seat.

Q. After you ask them to leave the car?

A. Yes. I would do one thing first. I would check their bodies, their clothing before I turn my back.

by Cole and then he searched the dash and under the seat of the car, looking for the knife. Cole discovered a gun and the knife under the hat. Jason and Leslie Hamm were then placed under arrest. A search was conducted incident to that arrest, during which cocaine and a large sum of money were discovered on appellant, Jason Hamm.

Appellant contends that:

Corporal Cole testified, albeit reluctantly, that he arrested Leslie Hamm for unauthorized use.

. . . . .

The trial judge did not rely on this basis for arrest. The reason is obvious: cross-examination of Cole and examination of the rental agreement demonstrated that there was no basis for an arrest for unauthorized use.

. . . . .

Instead, the trial judge relied on Cole having seen the knife. One problem is that for legally sufficient probable cause, "It is necessary that such belief abide in the seizing officer." *Dipasquale v. State,* 43 Md.App. 574, 406 A.2d 665 (1979). In this case, Officer Cole specifically disclaimed any belief in probable [cause] to arrest "for a knife that could be something that anybody may carry."

. . . . .

A search of a vehicle may be conducted pursuant to a lawful custodial arrest of an occupant. *New York v. Belton,* 453 U.S. 454, 461 [101 S.Ct. 2860, 2864] [69 L.Ed.2d 768] (1981). The prerequisite for a lawful custo-

---

Q. Before they got out of the car or after they got out of the car?
A. After they got out of the car.
Q. You would ask them to leave the car?
A. Step out of the vehicle, yes.
Q. And this is when you are fearful for your safety. And when you are placing Defendants under arrest, when they are driving a car, do you ask them to leave the car?
A. If I am placing them under arrest, I ask them to get out of the car.
Q. At your request, is that correct?
A. Yes.

dial arrest is probable cause to make the arrest. In this case, there was no probable cause and the fruits of the resulting search and seizure should have been suppressed.

Appellant's contentions, however, are based on erroneous perceptions of both the law and the facts of this case.

Appellant and his sister were lawfully stopped for a routine traffic violation. During that stop, Trooper Cole noticed the knife and developed a suspicion that the driver had obtained unauthorized use of the car. Regardless of the legitimacy of his suspicion, Trooper Cole became concerned for his safety when he returned to the vehicle and found the knife missing. At that point, he asked the vehicle's occupants to get out of the car, whereupon he frisked them and searched the car for weapons.

The initial stopping of the car was justified as the driver had committed a misdemeanor, speeding, in the officer's presence. The second phase of detention, the stop and frisk of the vehicle's occupants, was justified under *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1981). In that case, the Supreme Court held that a police officer may make a protective search of both occupants and the passenger compartment of a car after a traffic stop, even when there is no probable cause, if the officer has a reasonable belief, based on specific and articulable facts, that the stopped person is dangerous and has or may gain immediate possession of weapons. *See also Pennsylvania v. Mimms*, 434 U.S. 106, 111–12, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (police may order persons stopped for traffic violation out of their car and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous).

Once the weapons were found, Trooper Cole had probable cause to arrest appellant for a weapons violation. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *Accord United States v. Hensley*, 469 U.S. 221, 227, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). A subse-

quent, more extensive search was then justified as an incident to the arrest. *See New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Adams, supra.* Evidence found as a result of this more extensive search was, therefore, admissible. *Belton, supra; Adams, supra. See also Farrow v. State*, 233 Md. 526, 527, 197 A.2d 434 (1964); *Payne v. State*, 65 Md.App. 566, 573, 501 A.2d 484 (1985). *See generally* Annot., *Law Enforcement Officer's Authority, Under Federal Constitution, to "Stop and Frisk" Person—Supreme Court Cases*, 32 L.Ed.2d 942 (1972). Thus, like the prior two tiers of appellant's detention, we think that the third tier—the search incident to the arrest—was reasonable and not in violation of the Fourth Amendment. *Adams, supra.*

■ In so deciding, we expressly reject appellant's contention that the evidence must be suppressed because there was no probable cause to arrest appellant for unauthorized use of the car, the charge Trooper Cole gave at the time of arrest. In *Boddie and Brooks v. State*, 6 Md.App. 523, 252 A.2d 290 (1968), we defined what is meant by the term "probable cause."

Probable cause ... exists when the facts and circumstances within the knowledge of the arresting officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Michaels v. State*, 2 Md.App. 424 [234 A.2d 772 (1967)]; *Gaudio v. State*, 1 Md.App. 455 [230 A.2d 700 (1967)]. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Edwardsen v. State*, 243 Md. 131 [220 A.2d 547 (1966)]; *Terrell v. State*, 3 Md.App. 340 [239 A.2d 128 (1968)]. In other words, an officer is not required to have sufficient evidence to convict at the time of the arrest, but only probable cause or, as stated by the Supreme Court in *Spinelli v. United States*, 393

U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637 (1969)], "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." In *Davis v. United States, supra,* the District of Columbia Court of Appeals held at page 486 that *"the problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth."* And it is settled that the legality of an arrest is measured by the existence of probable cause *at the time of the arrest. Mullaney v. State,* 5 Md.App. 248 [246 A.2d (1968)]; *Leatherberry v. State,* 4 Md.App. 300 [242 A.2d 599 (1968)]; *Wilson v. State,* 2 Md.App. 210 [233 A.2d 817 (1967)]. In *Simms v. State,* 4 Md.App. 160 [242 A.2d 185 (1968)], we noted at page 167:

"In assessing the validity of an arrest under the rule *the essential ingredient is that probable cause existed within the knowledge of the arresting officer and not that he necessarily construed that knowledge correctly.* It is not the belief of the officer that determines the validity of the arrest; it is *whether, in the situation in which he found himself, he had probable cause to believe a felony had been committed and that the person arrested committed it."*

*Id.* at 532, 252 A.2d 290 (emphasis added). Even assuming, *arguendo,* that the officer did not have probable cause to arrest for unauthorized use, he certainly had probable cause to arrest for the weapons violation. The arrest was, therefore, justified on that basis. For, "[a]s to the *presence* of probable cause, if probable cause to arrest is apparently present, the fact that the information upon which the officer acted is subsequently determined to be false will not render the arrest illegal, nor does it matter that the arrest initially was made for the wrong offense." Cook, *Constitutional Rights of the Accused* at 106 (1972). *See also United States v. Lester,* 647 F.2d 869, 873 (8th Cir.1981) (validity of search incident to an arrest does not turn upon suitability of stated grounds for arrest, instead "the validity of the arrest should be judged by whether the arresting

officers actually had probable cause for the arrest, rather than by whether the officers gave the arrested person the right reason for the arrest"); *State v. Retford,* 276 S.C. 657, 281 S.E.2d 471, 472–3 (1981) (where officers clearly had probable cause to arrest appellant for auto theft, the fact that they stated the arrest was made for another offense did not render the arrest unlawful and, therefore, the fruit of the search incident to the arrest was properly admitted into evidence); *State v. Robinson,* 622 S.W.2d 62, 68 (Tenn. Cr.App.1980) (although defendant is entitled to be informed of the cause for his arrest, "an arrest is not rendered unlawful by the fact that an officer who has authority to make an arrest for a particular offense erroneously states he is making an arrest for some other offense, or even for a cause which is not in fact an arrest, or states the offense inaccurately."). *See* generally LaFave, 1 *Search and Seizure* § 1.4(d)(2d ed. 1987) (exclusion based on officer's mistaken grounds for arrest is "unjustified ... because such situations are often attributable to complicated legal distinctions between offenses or an officer's failure to record all the bases or the strongest basis upon which the arrest was made"). Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress.

II. Request to Withdraw From Agreement to Plead Not Guilty and Proceed on an Agreed Statement of Facts

■ Appellant contends that the trial court erred in denying his request to withdraw from his agreement to proceed by a not guilty statement of facts[3] and allow him to go to trial. Specifically, appellant alleges that the agreement was not made voluntarily, but was coerced by his attorney. Further, he argues "that Appellant acted to waive substan-

---

3. Although the plea of not guilty upon an agreed statement of facts is not specifically sanctioned by the Maryland Rules, it has been recognized in numerous cases. *See Sutton v. State,* 289 Md. 359, 424 A.2d 755 (1981); *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978); *Ward v. State,* 52 Md.App. 664, 451 A.2d 1243 (1982); *Yanes v. State,* 52 Md.App. 150, 448 A.2d 359 (1982); *Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1977).

tial constitutional rights not as a matter of free will, but out of a threat to his sister." [4]

■ The "agreement," which the trial court referred to as "a plea bargain," [5] was recited for the record at trial by the prosecutor:

The plea arrangement in this case is as follows: As to Jason Hamm, the plea bargain on the agreed statement of facts would be to Possession with Intent to Distribute Cocaine; that the State would be seeking five years incarceration to the Division of Correction; that the State would stet the other remaining counts in the Jason Hamm indictment.

The State will not pursue the subsequent offender section with respect to Mr. Hamm. When a PSI is completed and at the time of sentencing, if the Court sees fit to incarcerate Mr. Hamm for more than five years, then Mr. Hamm will have the option to withdraw his plea at that time, if he so desires.

With respect to Leslie Hamm, the plea would be to Possession of Cocaine. The State would oppose a 292, but would give the defense the opportunity to ... obviously the right to argue that to the Court.

The State, after the Court has an opportunity to review the PSI, will suggest to the Court no jail time with respect to Leslie.

And if the Court for some reason sees fit to incarcerate her, after reviewing the PSI, then she will have the right to withdraw her plea.

Also, as a side agreement to the arrangement that I just put on the record, it is my understanding that the

---

**4.** We note that even in the setting of a guilty plea an intent by the State to prosecute relatives of defendant if defendant refuses to plead guilty may not rise to the level of coercion, inducement or threat "so as to violate the voluntary nature of [a] guilty plea." *Hamlet v. State,* 68 Md.App. 553, 557, 514 A.2d 492 (1986).

**5.** In fact, the agreement was not a "plea agreement" or "plea bargain" sanctioned by the Maryland Rules of Procedure. *See* Md. Rule 4–243.

issues with respect to the suppression hearing that were previously heard by the Court on 4/15/86 and all of the exhibits pertaining to that suppression hearing, will be preserved in that the defense attorney will take an appeal on the suppression issue only, to the Special—the Court of Special Appeals.

While the appellant and his trial counsel acknowledged the "agreement" at trial, appellant, at sentencing, sought "to withdraw from the plea negotiations" because he "... was coerced into it ... by [his] attorney." To this the learned trial judge advised the appellant that he could seek postconviction relief. Appellant now characterizes that advice as "an obvious refusal to exercise discretion" and incongruously couples it with the contention that his waiver of substantial constitutional rights was involuntary. There is no merit to appellant's arguments. Even if the appellant's plea were viewed as a guilty plea or its functional equivalent,[6] the record is clear that prior to trial, the court had gone to painstaking efforts to be sure that appellant's agreement was voluntary and that he understood both the charges against him and the consequences of the agreement. The relevant colloquy was as follows:

THE COURT: All right. Mr. Hamm, do you understand the charges against you?

MR. HAMM: Yes, sir.

THE COURT: The Court advises you that you have a right to be tried either by a Judge or by a jury. Whether you are tried by a Judge or jury you must be found guilty beyond a reasonable doubt. In a jury trial, all twelve jurors must agree that you are guilty beyond a reasonable doubt. In a trial before a Judge, the Judge makes that determination.

How do you wish to be tried, by a Judge or by a jury?

---

6. We hasten to note that the plea at bar was not the functional equivalent of a guilty plea. *See Ingersoll v. State,* 65 Md.App. 753, 501 A.2d 1373 (1986) and even if it were, we do not suggest that it would be subject to withdrawal under Md. Rule 4–242(f).

MR. HAMM: By a Judge.

THE COURT: In giving this answer, is it your intention to give up your constitutional right to a trial by jury?

MR. HAMM: Yes, sir.

THE COURT: Are you doing this knowingly and voluntarily?

MR. HAMM: Yes, sir.

THE COURT: And what is your plea?

MR. BIRT: The plea is Not Guilty.

THE COURT: Again going on an agreed statement of facts?

MR. BIRT: Yes, Your Honor.

THE COURT: Would you now advise the Defendants as to what an agreed statement of facts is?

MR. BIRT: Leslie and Jason Hamm, when the Court proceeds on an agreed statement of facts it means that the State's Attorney will read into the record a statement of facts that he believes he would be able to prove if the case would go to trial.

This is done in lieu of an actual trial. That means that there would be no witnesses that will take the stand. There will•be no opportunity to cross examine the witnesses.

By proceeding on this basis, you are waiving certain of your trial rights. You are waiving your right to produce evidence, your right to confront the witnesses against you, your right to cross examination of these witnesses. In fact, you are waiving all of your trial rights except for the right to move for judgment of acquittal at the end of the presentation of the statement of facts.

And as you know, the facts as read into the record will most probably be likely sufficient to prove you guilty of the charges.

Do you understand that?

MR. HAMM: Yes.

MISS HAMM: Yes.

THE COURT: Do you understand that you are giving up also your right to testify in your own behalf and so forth; both of you understand that?

MR. HAMM: Uh-huh.

MISS HAMM: Yes.

THE COURT: And you are willing to go on this basis?

MISS HAMM: Yes.

MR. HAMM: Yes.

The court below did not err in refusing appellant's request for a second trial.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.