## LAWRENCE JAMES *v.* STATE OF MARYLAND

[No. 153, September Term, 1968.]

*Decided January 16, 1969.*

The cause was argued before MURPHY, C.J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Leonard S. Freedman* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Charles E. Moylan,
Jr., State's Attorney for Baltimore City,* and *Fred K. Grant,
Assistant State's Attorney for Baltimore City,* on the brief, for
appellee.

PER CURIAM.

Appellant was convicted by the court sitting without a jury
of assault on a minor child in violation of Maryland Code, Ar-

ticle 27, Section 11A(a)[1] and sentenced to one year under the jurisdiction of the Department of Correction. He contends on this appeal that the State failed to prove the *corpus delicti* and that the evidence was insufficient to support his conviction.

The pertinent facts disclosed by the record are these: Beverly James, appellant's wife and the mother of twenty-two month old Tracey James, the infant victim, was called as a witness on behalf of the State and compelled to testify against her husband.[2] She testified that she had been married to appellant for seven months and that they had been living together with Tracey and their three other children, ages 3, 4, and 5; that on January 25, 1968, appellant had returned home from work at approximately 4:30 p.m.; that Tracey was playing with their other children when, at about 7:00 p.m., she left the children in her husband's care so that she could go to the doctor; that when she left home Tracey's body was free of any bruises; that when she returned at about 11:00 p.m. Tracey "was standing up like she had been crying" and "she had wet and she had vomit in the bed"; that she did not examine Tracey that night but the following day she noticed some "fingernail marks" on both Tracey's arms which she treated with vaseline; and that on the following day, January 27, Tracey would not eat, and when she went to hold her hands in order to feed her, "she started crying like they [her hands] were hurting, and she had these bruises on her arms," so she took Tracey to Maryland University Hospital to be examined. Mrs. James further testified that between January 25 and January 27, 1968, all her children had remained at home and that neither she nor any of her children had struck Tracey. On cross-examination she admitted that several months previous to that January her oldest child

---

1. Section 11A(a).

   "*Penalty.*—Any parent, adoptive parent or other person who has the permanent or temporary care or custody or responsibility for the supervision of a minor child under the age of sixteen years who maliciously beats, strikes or otherwise mistreats such minor child to such degree as to require medical treatment for such child shall be guilty of a felony, and upon conviction shall be sentenced to not more than fifteen years in the penitentiary."

2. See Maryland Code, Article 35, Section 4.

had opened a locked cellar door, and their four-year old child fell down the cellar stairway.

The University Hospital records were received in evidence and showed that Tracey James was examined on January 27, 1968; that the physicians' findings, as set forth in the hospital record, indicated that Tracey had "multiple abrasions and contusions over her entire body"; that she had "obvious gross injuries of physical trauma * * * with multiple abrasions, old and new on forehead * * *, abrasions over lower thorax posterior, and multiple areas of point tenderness of arm and forearm"; that the roentgen examination revealed "[e]vidence of a complete transverse fracture of the distal end of the right radius * * * [and] questionable fracture of the ossified, capitellum of the right elbow," and "[e]vidence of a complete transverse fracture of the distal end of the left radius * * * and a Greenstick fracture of the distal end of the left radius * * *." The hospital report noted that "Mother has stated that pt. [patient] has been beaten on numerous occasions by her father." The examining physician, in his diagnosis, characterized Tracey's injuries as those of a "Battered Child." [3]

Appellant contends that the State failed to prove the *corpus delicti* "as it is quite conceivable that Tracey James was accidentally injured in her home between January 25, 1968 and January 27, 1968" and that it is "also possible that one of the said child's brothers or sisters caused her injury, either deliberately or accidentally, or that Tracey accidentally fell down the aforementioned steps, as one of her sisters had previously done." He also maintains that even if there was sufficient proof of the *corpus delicti*, there was no evidence that he inflicted the injuries upon Tracey, since there was no proof that he was at home when Tracey was injured; but that even if he had then been at home, his mere presence would not suffice as proof that he was criminally responsible for Tracey's condition.

The State contends, on the other hand, that the evidence showed that Tracey was maliciously beaten to such a degree as to require medical treatment; that the medical report indicated

---

3. According to the Hospital Report, there was "a small amount of callus formation" at the site of each radius fracture.

that Tracey was a "Battered Child"; that this is a term of art used by the medical profession to describe a specific condition or syndrome relating to a child who has been the victim of malicious assault by parental beating; that in other words the "battered child" syndrome is a clinical condition in infants who have received serious physical abuse; and that among the indices of suspicion which are designed to aid an examining physician in diagnosing a "battered child," and which are pertinent in the present case are (1) age usually under three years; (2) characteristic distribution of fractures; (3) disproportionate amount of soft tissue injury; (4) evidence that injuries occurred at different times and are in different stages of repair; (5) cause of recent trauma doubtful; (6) suspicious family history, and (7) previous similar episodes. The State cites several text authorities in support of its contention that the evidence satisfactorily established the *corpus delicti*.[4]

The State also contends that the evidence showed that appellant was the person criminally responsible for Tracey's injuries in that his wife's testimony established that Tracey was free of injuries when left in his care on January 25 between 7:00 p.m. and 11:00 p.m.; that during this time "something of an abnormal nature occurred to the body of Tracey James"; that appellant was present during this critical period; and that there was evidence that neither the child's mother or brothers or sisters struck her between January 25 and January 27.

While the *corpus delicti* must be proved beyond a reasonable doubt, *Sizemore v. State,* 5 Md. App. 507, it may be established by circumstantial evidence, *Gamble v. State,* 2 Md. App. 271. As the record indicates, there was evidence showing that Tracey was free of bruises on January 25 when placed in appellant's care. There was evidence showing that she was not struck by either her mother or brothers and sisters between January 25 and January 27, and there was no evidence showing

---

4. *The Battered Child,* London Hospital Med. Sci. Law (1966); Parker G.E.M.D., *The Battered Child Syndrome Problem in the United States,* Dept. of Law, Vanderbilt University, Tenn. Med. Sci. Law 1965, and *The Radiologic Diagnosis in Infants and Children* by Armand E. Brodeur, M.D., The C.V. Mosby Co., St. Louis, Mo., 1965, Section 5, The Mistreated Child.

that she was involved in any accident between those dates. We think it plain that Tracey's extensive injuries were neither accidental nor innocent but as indicated by the physicians' diagnosis of a "Battered Child" had been deliberately and criminally inflicted upon her. In this connection, the mother's statement as set forth in the hospital record that appellant had beaten Tracey on numerous occasions may have assisted in that diagnosis. In any event, we think the *corpus delicti* was satisfactorily established, and that there was legally sufficient evidence that, as specified in Section 11A(a), some person did "maliciously" beat, strike or otherwise mistreat a minor child to such degree as to require medical treatment.

And we think it equally clear from the summary of evidence herein related that the facts establishing the *corpus delicti* also tend to establish that appellant was the criminal agent. Even assuming that the statement in the hospital record to the effect that appellant had beaten Tracey on numerous occasions would not have been properly admissible as part of the hospital record had objection been made to it, there was no objection to such statement so that, although hearsay, it may be afforded the same probative force as if competent, the weight thereof being for the trier of fact. *Hyman v. State,* 4 Md. App. 636, and cases cited at page 642. See also *Fabian v. State,* 235 Md. 306, a case involving assault and battery upon an infant child, where it was held that testimony of a witness who was not present when the crime was committed that the accused beat the infant "all the time" was admissible as evidence of other offenses which "has a natural tendency to establish, or offers a reasonable presumption or inference as to, a principal fact at issue or matter in dispute." It is our opinion that the evidence, in totality, mounts up to more than appellant's mere presence at the scene of the crime and we cannot, on the record before us, conclude that the judgment of the trial court, in finding appellant guilty, was clearly erroneous under Maryland Rule 1086.

*Judgment affirmed.*