JAMES ALBERT WARD, JR. *v.* STATE OF MARYLAND

[No. 173, September Term, 1982.]

*Decided November 4, 1982.*

The cause was submitted on briefs to LOWE, MASON and LISS, JJ.

Submitted by *Mark Colvin, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Scott G. Patterson, Assistant State's Attorney for Anne Arundel County,* for appellee.

LISS, J., delivered the opinion of the Court.

On July 15, 1981, James Albert Ward, Jr., the appellant, was convicted in the Circuit Court for Anne Arundel County (Hopper, J.) in a trial before the court on Indictment No. 24,824 of arson, burglary and theft. On September 14, 1981, the appellant was convicted in the Circuit Court for Anne Arundel County (Hopper, J.) in a trial before the court on Indictments Nos. 24,822, 24,823, and 24,825 of various other burglary and theft charges. All of these cases were consolidated for sentencing and on September 28, 1981, the appellant was committed to the custody of the Division of Correction for twelve years for the arson [1] with concurrent sentences for the other offenses.[2]

On appeal the appellant contends, in connection with his arson conviction at the July 15, 1981, trial on Indictment No. 24,824 that:

    1. the evidence was insufficient to sustain his conviction

and, in connection with his convictions of unrelated burglary and theft offenses at the September 14, 1981, trial on Indictment Nos. 24,822, 24,823 and 24,825 that:

---

    **1.** On January 18, 1982, a sentence review panel ordered that the sentence for the arson conviction be reduced from twelve years to ten years.
    **2.** Under Indictment No. 24,824, the appellant received concurrent sentences of nine years for the burglary of the James residence and six years for theft of property. Under Indictment No. 24,822 he received concurrent sentences of nine years for the burglary of the Robert Yarbrough residence and five years for the theft of property. Under Indictment No. 24,823 he received concurrent sentences of nine years for the burglary of the Pat Freeman residence and five years for the theft of property. Under Indictment No. 24,825 he received concurrent sentences of nine years for the burglary of the Stephen Jones residence and five years for the theft of property.

2. the court erred in failing to comply with Maryland Rule 731 c

3. the court erred in denying his motion to suppress certain evidence

4. the evidence was insufficient to sustain his convictions.

The record before us, in connection with the arson conviction under Indictment No. 24,824, shows that at about 3:00 A.M. on Sunday, January 25, 1981, firemen responded to a fire at the residence of Gary James, who was away at the time. Firefighter William Novosel and arson expert Carlos Downes both testified that the house had been ransacked before the fire of incendiary origin had been started. James told the court that his house had been in an orderly condition when he had left it the preceding day.

James said a number of uncirculated two-dollar bills, which he collected, had been taken from the house. The police followed the trail of these new two-dollar bills, which began showing up in the neighborhood stores, back to the appellant. After being arrested on unrelated charges, the appellant gave the police a statement admitting that he and David Mabeus had broken into the James' house.[3] The charges against the appellant in connection with the other burglaries and thefts were contained in Indictment Numbers 24,822, 24,823 and 24,825. During the course of interrogation, the appellant made certain statements to the police concerning these charges. The statement as to the charges in Indictment No. 24,822 showed that at sometime between December 23, 1980 and January 2, 1981, the residence of Robert Yarbrough had been entered. Coins worth $228.00 and other property worth $879.00 had been taken. The appellant's statement to police concerning Indictment No. 24,823 showed that at sometime between December 24, 1980 and January 4, 1981, the residence of Pat Freeman had been entered. Coins and other household items of an

---

**3.** Subsequent to this break-in, the appellant and Mabeus had a falling out which culminated in an assault on the appellant by Mabeus. An appeal of Mabeus' assault conviction was before us in Mabeus v. State, No. 13, September Term, 1982.

undetermined value were taken. The information in Indictment No. 24,825 showed that at sometime between January 30, 1980 and February 1, 1981, the residence of Stephen Jones had been entered. Jewelry and other items of an undetermined value had been taken.

On February 4, 1981, the appellant was arrested in Baltimore City attempting to sell some of the silverware taken in the several crimes. Search of vehicles used by the appellant resulted in the recovery of some of the stolen items. After being arrested, the appellant described to the police how each of the residences had been entered at night and the items taken. He said that the thefts had occurred because he needed money. He added that some of the money had been used to go skiiing in New York State.

On August 28, 1981, the Circuit Court for Anne Arundel County (Wolff, J.) denied the appellant's request for suppression of the statement he had made to the police and of the evidence that had been taken from his vehicles. Thereafter, the charges on Indictments Nos. 24,822; 24,823; and 24,825 were tried before the court on September 14, 1981, and submitted on "not guilty pleas with agreed statements of fact."

## I. Sufficiency of the arson evidence

The appellant contends that the evidence at his July 15, 1981, trial was insufficient to sustain his conviction of arson. He points out that the court in rendering its verdict said:

> ". . . I'm persuaded beyond a reasonable doubt that the fire was of incendiary origin and that it occurred during the time that the defendant and Mabeus were in the premises and one or the other of them actually set the fire.
>
> And if while they were in there for purposes of committing a crime, it should, in fact, turn out that Mabeus set it, then the defendant, Ward, would be equally guilty as a principal in the second degree."

The appellant argues:

> "Neither reason nor experience supports the contention that arson is a natural and probable consequence of burglary. Appellant cannot be held criminally liable for arson if the arson was a fresh and independent product of the mind of Mabeus and was outside the scope of their common purpose, namely, burglary."

The appellant concludes:

> "Without some evidence that Appellant himself set the fire or 'aided, counselled or procured' the setting of the fire by Mabeus, Appellant's conviction of arson cannot stand."

The State agrees with the appellant's reasoning but urges, relying on *Robinson v. State,* 17 Md. App. 451 (1973) that even though the court erred in its reasoning, "its ultimate determination of guilt can still be affirmed on appeal." In *Robinson v. State, supra,* we had commented at 17 Md. App. 460:

> ". . . the verdict of the court would be sustained as not clearly in error, because evidence was present upon which the court could have arrived at the same conclusion upon other grounds."

The State points out that in the statement the appellant gave to the police, he said:

> " '. . . I don't know whether David did or not. I was drunk from drinking earlier I was smoking in the house and could have accidentially dropped a cigarette or even thrown it down when I finished smoking it. I normally don't do this but in this case I wouldn't care about the house.' "

The State then argues:

> "The testimony of the expert [4] and the Appel-

---

4. The State produced as an expert Fire Investigator Downs, who testified that the fire was incendiary in nature and that there "appeared to be at least two and possibly three or more points of origin of the fire."

lant's confession provided sufficient evidence to prove arson because it showed that Appellant either intentionally set a dangerous fire or set a dangerous fire with reckless and wanton disregard of the consequences in the terms of the dangers of bringing harm to others."

See *Debettencourt v. State,* 48 Md. App. 522 (1981).

We agree and, for the same reasons as set forth in *Robinson v. State, supra,* find that the appellant's contention concerning sufficiency of the evidence is not grounds for setting aside his arson conviction.

## II. Failure to comply with Rule 731 c.

At the commencement of the trial on September 14, 1982, the State advised the court that the appellant:

". . . would enter pleas of not guilty to the indictments but would waive a formal proof in this matter and will proceed on a statement of facts to be provided by the State as to the substance of these charges. It is further understood that Mr. Ward would have no testimony, evidence or statement of facts to present to the Court in his defense. Assuming that this is acceptable with the Court, we have agreed to make certain recommendations to the Court should Mr. Ward be found guilty of any or all of these offenses."

The following colloquy then occurred:

"COURT: Is it an agreed statement of fact?

MR. NEWCOMB [Appellant's trial counsel]: Yes, Your Honor.

COURT: A not-guilty plea on an agreed statement of fact?

MR. NEWCOMB: That's correct, Your Honor.

MR. PATTERSON [Assistant State's Attorney]: Your Honor . . . for the Court's information, the reason we're proceeding like this is because the

defendant wishes to reserve a possible appeal point on a Motion to Suppress, which was heard in this court. . . excuse me. . . which was heard by Judge Wolff on a prior date in these cases in which his Motion to Suppress was denied, and as a possible appeal ground to preserve that rather than entering a plea of guilty, . . . he's decided to proceed . . . in this manner and is acceptable to the State."

Now on appeal the appellant contends, relying on *Sutton v. State,* 289 Md. 359 (1981), that his September 14, 1981 trial on "not guilty pleas with agreed statements of facts" were "the functional equivalent" of guilty pleas. He argues that although the court did conduct a *voir dire* of him as to whether he understood the procedure being employed, the court did not ascertain, as required by Maryland Rule 731 c, if he was aware of the maximum penalties that could be imposed. In its brief the State concedes that the proceedings were "the functional equivalent" of guilty pleas and that the court erred in not conducting the inquiry required by Maryland Rule 731 c.

We do not agree with either the appellant or the State, although at first blush it might appear that our decision in *Yanes v. State,* 52 Md. App. 150 (1982) could stand for the broad proposition that any "not guilty plea with an agreed statement of facts" is now to be regarded as "the functional equivalent to a guilty plea." In *Yanes v. State, supra,* we said at 52 Md. App. 155:

". . . [T]he 'plea of not guilty on an agreed statement of facts,' as employed by trial counsel for the appellant, cannot, under the particular circumstances, be construed as anything short of a plea of guilty, irrespective of what counsel chose to call it."

One problem with the State's interpretation is that it overlooks the fact that on the occasions when a "not guilty plea with an agreed statement of facts" has been found to be "the functional equivalent of a guilty plea", the findings have been based on the particular facts and circumstances of

the situations in those cases. For example in *Sutton v. State, supra,* the Court of Appeals observed at 289 Md. 365:

"... after the case was called to trial the attorney for the petitioner asked whether the trial court wished 'to proceed by way of a guilty plea, on an Alford plea, or a not guilty statement of facts with the defendant not testifying and submitting.' The trial court responded, 'Not guilty statement of facts.' In response to this direction, the attorney for the petitioner tendered a plea of not guilty upon agreed facts."

The Court of Appeals then held at 289 Md. 366:

"... [T]he totality of the circumstances, and in particular, the facts that the petitioner's plea was entered at the direction of the trial court and that she was aware that she would be placed on probation, shows that the proceeding was not in any sense a trial and offered no reasonable chance that there would be an acquittal. Under these particular circumstances, the petitioner's plea was the functional equivalent of a guilty plea." (citation omitted)

In *Yanes v. State, supra* we noted at 52 Md. App. 152 that after Yanes had entered not guilty pleas:

"... [T]he judge made certain inquiries of the appellant as to the appellant's understanding that the matter would be submitted to the judge on an agreed statement of facts, and 'based on those facts,' the judge would determine whether the appellant was guilty."

and observed at 52 Md. App. 153:

"Following each recital of facts, appellant admitted that the statements were true. In addition, appellant agreed to incorporate a list of stolen items into the 'stipulation' and further agreed that he would pay for them.

> Having made a full and complete in-court confession, appellant should not then have been surprised when the trial judge handed down verdicts of guilty as to both counts to which appellant had, through his counsel, 'stipulated.' "

We then concluded that under those particular circumstances, the "not guilty with an agreed statement of facts" could not "be construed as anything short of a plea of guilty."

The principal distinguishing feature about the decision in both *Sutton* and *Yanes* is that there was nothing left to be decided concerning the guilt of the accused based on the information contained in the agreed statement of facts. Obviously this is not always the situation where a case is submitted on an agreed statement of facts. We have reversed convictions where it was contended on appeal that the evidence recited in the agreed statement of facts did not contain a sufficient factual basis to constitute the crime of which the accused had been convicted. Moreover, the criteria discussed in *Sutton* and *Yanes* are not the only guides to be used in determining whether or not a "not guilty plea with an agreed statement of facts" is to be treated as "the functional equivalent of a guilty plea."

In the instant case, the appellant's trial counsel, at the September 14, 1981 trial, advised the court that the "not guilty pleas with agreed statements of facts" were being entered for the purpose of preserving for appellate review the propriety of the admission of certain evidence.[5] As we said in *Deyermond and Steger v. State,* 19 Md. App. 698, 706 (1974):

> "We believe it clear that when a guilty plea, otherwise effectively accepted, follows a ruling by the trial court that challenged evidence is admissible, the propriety of the ruling is subject to review only under post conviction procedures, . . ."

---

5. This is the issue that the appellant has raised, infra, as his next contention in connection with the September 14, 1981 trial.

In the instant case we consider that the appellant, having specifically preserved "rights" incident to a not guilty plea, may not under the facts of this case claim "rights" incident to the entry to a plea of guilty. Therefore, his contention is not ground for setting aside his convictions at the September 14, 1981 trial.

### III. Suppression of evidence

The appellant filed a motion to suppress certain evidence. He summarizes his complaint and the court's action as follows:

> "At the pre-trial suppression hearing, [in the Circuit Court for Anne Arundel County (Wolff, J.) on August 28, 1981], the State presented evidence to show that on February 4, 1981, Sgt. Thomas Wade of the Baltimore City Police Department observed, in the trunk of Appellant's car, several pieces of silver that he suspected were stolen. After tracing the ownership of Appellant's case [sic], Sgt. Wake promptly telephoned the Anne Arundel County police. On the basis of what Sgt. Wade had seen in the trunk of his car, Appellant was arrested ninety minutes later by Anne Arundel County police officers.
>
> The record further shows that immediately following his arrest, Appellant was interrogated by the police not only about the burglary for which he had been arrested (No. 24,825) but also about two other burglaries that had been committed in the same area. (Nos. 24,822 and 24,823). Appellant promptly confessed to all three and, in addition, consented to a search of a second vehicle from which the police recovered property stolen in No. 24,825.
>
> The trial court ruled that Appellant consented to the search of the trunk of his car by Sgt. Wade and, therefore, his confession and the evidence seized from the second vehicle were not the products of an

illegal search. Accordingly, the motion to suppress was denied."

The appellant then argues that:

"Wade's testimony shows no more than acquiescence to a claim of lawful authority to search and does not satisfy the State's burden of proving consent."

and concludes:

"The confessions and the consent to search the second vehicle were obtained immediately following Appellant's arrest. There were no intervening circumstances. Accordingly, the confessions and evidence seized from the second vehicle were products of his unlawful arrest and should have been suppressed." (citations omitted)

At the suppression hearing on August 28, 1981, Wade testified that the appellant had initially denied having a car. Wade said that when confronted with the fact that he knew the appellant did have a car, the appellant then told him that the silverware was in the trunk of the car. The appellant, according to Wade, gave Wade the keys and Wade opened the trunk of the car.

The appellant contradicted Wade's testimony. He said that Wade had searched him, removed the keys from his pocket and then searched the trunk. Faced with this conflict in testimony, the court in denying the motion to suppress said:

"It comes down to a question of credibility. And it's not that I believe one more than the other, but it's that I disbelieve the defendant's version. I don't think it could have happened that way. And under the totality of circumstances, I don't find that this is a nonconsensual search. So that, finding that he gave consent, perhaps maybe reluctantly, maybe he was hoping the officer wouldn't see what was in there. Because there wasn't a lot of stuff in there,

but I believe that he did let the officer look into it without being threatened or coerced."

In *Humphrey v. State,* 39 Md. App. 484, 489 (1978), we said:

"The determination whether the consent was voluntary, in the constitutional context, is a factual question to be determined from the totality of all the circumstances."

Subsequently, we observed at 39 Md. App. 490:

"Mrs. Humphrey testified that she allowed the search to take place nonetheless because she did not believe that they would uncover any incriminating evidence. Thus, it appears that Mrs. Humphrey's willingness to allow the warrantless search to take place was basically a tactical decision calculated 'to turn suspicion away from [her husband] ... by appearing to give the authorities innocent and wholehearted cooperation.' " (citation omitted)

The instant case contains a similar finding of fact by the court in the denial of the appellant's motion to suppress. Since the appellant's contention hinges on the statement and the evidence taken from the car being the fruits of an unlawful search by Wade of the trunk of the appellant's car, we find, for the same reasons as set forth in *Humphrey v. State, supra,* his contention without merit.

IV. Improper sentences

Lastly the appellant, relying on *Proctor v. State,* 49 Md. App. 696 (1981), contends:

"Since the evidence presented in Nos. 24,823 and 24,825 does not establish that the property stolen in those cases had a value of $300 or more, the five year sentences imposed on the theft counts in these cases exceed the maximum sentence allowed by Section 342(f) (2). Accordingly, these cases should be remanded for imposition of proper sentences."

676

The appellant points out that the maximum allowable sentence for a misdemeanor theft is eighteen months.

In *Proctor v. State, supra,* we said at 49 Md. App. 704:

"... [I]t appears that a defendant can be found guilty of theft without any showing of the value of the stolen property. However, where no evidence of the value of the goods has been adduced, the items must be deemed to have a worth less than $300 and as such, the defendant will be sentenced accordingly under the misdemeanor provisions of Section 342 (f) (2)."

The State concedes the correctness of the appellant's contentions and we agree. Therefore the appellant's sentence in the case of Indictments Nos. 24,823 (the Freeman residence) and 24,825 (the Jones' residence) will be vacated and those cases remanded for resentencing.

> *Sentences in the cases of Indictments Nos. 24,823 and 24,825 vacated and cases remanded for resentencing.*
> *Remainder of judgments affirmed.*
> *One half of costs to be paid by appellant and one half of costs to be paid by Anne Arundel County.*